IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| NICLAS WÄSCHLE, deceased, by and through his personal representative, PATRICIA BIRKHOLD-WÄSCHLE, as Personal Representative of the Estate of Niclas Wäschle; PATRICIA BIRKHOLD-WÄSCHLE, individually; RAIMUND WÄSCHLE, individually; and PHILIP WÄSCHLE, individually,<br><br>      Plaintiffs,<br><br> vs.<br><br>WINTER SPORTS, INC. dba WHITEFISH MOUNTAIN RESORT, a Montana corporation; WORLD EXPERIENCE dba WORLD EXPERIENCE TEENAGE STUDENT EXCHANGE; FRED VANHORN; LYNNE VANHORN; and JOHN DOES 1-10,<br><br>      Defendants. | CV 13–309–M–DWM<br><br>OPINION and ORDER |

  This case stems from the death of sixteen-year-old German foreign exchange student Niclas Waschle ("Niclas"). Niclas died following a ski accident that occurred at Whitefish Mountain Resort on December 29, 2010. At the time of

-1-

his death, Niclas had been living with a host family, Defendants Fred and Lynne Vanhorn ("the Vanhorns"), in Columbia Falls, Montana through the exchange program of Defendant World Experience. Niclas's family and estate ("Plaintiffs") brought suit against World Experience,[1] Whitefish Mountain Resort, and the Vanhorns. The Vanhorns seek summary judgment as to all of Plaintiffs' claims against them, principally relying on state and federal volunteer immunity statutes. On September 3, 2015, at the parties' request, the Court heard argument on that motion. For the reasons stated on the record and further explained below, the Vanhorns' motion (Doc. 36) is granted.

## BACKGROUND[2]

In 2010, Niclas applied for placement as a foreign exchange student with World Experience. In his application, Niclas indicated that he was interested in skiing, that he was a frequent skier, and that he was a good skier. The application was signed by both Niclas and his mother, Patricia Birkhold-Waschle. Around that time, the Vanhorns applied as host parents with World Experience and advised that they lived near a ski resort and skied frequently. In a letter provided

---

[1] Defendant World Experience has been dismissed upon stipulation by the parties. (Doc. 44.)

[2] The following facts are undisputed unless otherwise noted. (*See* Docs. 30, 38 & 40.)

to the Vanhorns, Niclas indicated that he liked skiing a lot, that his last ski trip had been to the Austrian Alps, and that he had improved his skiing skills. World Experience arranged for Niclas to live with the Vanhorns for the 2010 fall school semester.

In September 2010, Fred Vanhorn contacted Niclas's mother about purchasing a ski pass for Whitefish Mountain Resort. She provided both permission to purchase the ski pass for Niclas and funds to do so. Once the ski season began, Niclas skied ten days at Whitefish Mountain Resort between December 5, 2010 and December 29, 2010, sometimes in the company of Fred Vanhorn. At approximately 11:00 a.m. on December 29, 2010, Niclas was found unresponsive by other skiers below the top terminal of the T-bar ski lift, which was within the boundary of Whitefish Mountain Resort. The area was not blocked off in any way. Niclas had fallen in a tree well. Four days later, on January 2, 2011, Niclas died in the hospital.[3]

## SUMMARY CONCLUSION

The parties dispute whether the Vanhorns warned Niclas of the danger of tree wells, skiing on non-groomed runs, and/or skiing alone. They also dispute

---

[3] The Vanhorns' brief incorrectly states that Niclas died on January 1. (*See* Death Cert., Doc. 40-10.)

whether Niclas was admonished not to ski alone and Niclas's skill level. Because these disputes do not give rise to a genuine issue of material fact, summary judgment is granted in favor of the Vanhorns. The Vanhorns are immune to Plaintiffs' ordinary negligence claims under federal and state volunteer immunity statutes. *See* 42 U.S.C. § 14501-506; Mont. Code Ann. § 27-1-732. As to Plaintiffs' claims that the Vanhorns acted with gross misconduct and are subject to punitive damages, there is no proof that a genuine issue of material fact exists as to whether the Vanhorns warned Niclas of the danger of tree wells or skiing alone. Even if such a dispute could be shown, Plaintiffs have failed to establish facts to raise a fact question that would permit a jury to reasonably find that the Vanhorns' conduct rose to the level of willful or wanton misconduct as a matter of law.

### STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are

not considered. *Id.* at 248. "[I]n ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (per curiam) (internal quotation marks and alterations omitted).

## ANALYSIS

### I. Volunteer Immunity Statutes

The Vanhorns argue they are immune from suit, relying on federal and Montana statutes governing immunity for nonprofit volunteers to make their case. Under the relevant portion of the federal statute,

> no volunteer of a nonprofit organization or governmental entity shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity if . . . the volunteer was acting within the scope of the volunteer's responsibilities in the nonprofit organization or governmental entity at the time of the act or omission . . . [and] the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer[.]

42 U.S.C. § 14503(a). Although the Federal Volunteer Protection Act controls and preempts silent or inconsistent state law, states are free to enact more protective laws. *Id.* at § 14502. Pursuant to the Montana statute,

> (1) An officer, director, or volunteer of a nonprofit corporation is not individually liable for any action or omission made in the course and scope of the officer's, director's, or volunteer's official capacity on behalf of the nonprofit corporation. This section does not apply to

> liability for willful or wanton misconduct. The immunity granted by this section does not apply to the liability of a nonprofit corporation.
>
> (2) For purposes of this section, "nonprofit corporation" means:
> (a) an organization exempt from taxation under section 501(c) of the Internal Revenue Code, 26 U.S.C. 501(c), as amended[.]

Mont. Code Ann. § 27-1-732. Because this statute only provides an exception from immunity for willful or wanton misconduct, it provides greater protections than its federal counterpart and is not preempted by the Act. *See* 42 U.S.C. § 14502(a). The Vanhorns' motion for summary judgment is granted as to Plaintiffs' ordinary negligence claims because there is no genuine issue of material fact as to whether the Vanhorns were volunteers acting for a nonprofit organization within the scope of their responsibilities.

### A.    Volunteers

"Volunteer" is defined as "an individual performing services for a nonprofit organization or a governmental entity who does not receive [] compensation (other than reasonable reimbursement or allowance for expenses actually incurred)[] or [] any other thing of value in lieu of compensation, in excess of $500 per year[.]" 42 U.S.C. § 14505(6). An individual generally qualifies as a "volunteer" if he is not compensated. *Segway, Inc. v. Special Olympics Conn., Inc.*, 2015 WL 1244509, **7-8 (Conn. Super. Feb. 23, 2015) (unpublished) (holding no issue of material

fact as to whether defendant was volunteer because he received no compensation); *McGeorge v. Town of Hamden*, 2012 WL 1434904, at **8-9 (Conn. Super. Mar. 29, 2012) (unpublished) (same).

There is no dispute that the Vanhorns were not compensated for acting as Niclas's host parents. Rather, Plaintiffs claim the relationship between the Vanhorns and World Experience falls outside the definition of a volunteer, insisting that the Vanhorns were merely participants *in* the program, not volunteers *for* it. The twist Plaintiffs argue is that the Vanhorns were volunteering for Niclas and his family not World Experience. While this fact dispute is material in that it determines whether or not the volunteer immunity statutes preclude liability, it is not a genuine issue of fact that would preclude summary judgment.

"[W]hen the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Anderson*, 477 U.S. at 247-48 (emphasis in original).

Plaintiffs insist that World Experience's limited role in the placement process, the absence of documentation notifying Niclas's mother that the host family was a volunteer for World Experience, the direct communication between Niclas's mother and the Vanhorns, and the Vanhorns' implicit assumption of the parental role and its attendant duties all indicate that the Vanhorns had a more direct relationship with Plaintiffs. However, even drawing all reasonable inferences in Plaintiffs favor as to the relationship between the Vanhorns and Niclas and his family, there is no genuine dispute as to the Vanhorns' relationship with World Experience. *See Avenoso v. Mangan*, 2006 WL 490340, at *5 (Conn. Super. Feb. 14, 2006) (unpublished) (granting summary judgment in favor of the defendant where the plaintiff failed to offer any evidence to dispute the evidence showing the defendant was not compensated and acting in the course and scope of his volunteer duties at the time of the alleged conduct); *cf. Manter v. Abdelhad*, 2014 WL 7466738, at *3 (Mass. Super. Nov. 7, 2014) (unpublished) (holding that no genuine dispute of fact existed as to whether the defendant church was a nonprofit organization where the plaintiff merely asserted she could not find it on the Secretary of State website).

The Federal Volunteer Protection Act was enacted due to a concern that the

willingness of volunteers to offer their services would be deterred by the fear of negligence claims against them. *See* 42 U.S.C. § 14501. A finding here that the volunteers who seek to serve the beneficiaries of a 501(c)(3) organization, rather than promote the entity itself, are not entitled to immunity would eviscerate the express purpose of the statute, which "is to promote the interests of social service program *beneficiaries* and taxpayers and to sustain the availability of programs, nonprofit organizations, and governmental entities that depend on volunteer contributions by reforming the laws to provide certain protections from liability abuses related to volunteers serving nonprofit organizations and governmental entities." *Id.* at § 14501(b) (emphasis added); *see Elliot v. La Quinta Corp.*, 2007 WL 757891, at *3 (N.D. Miss. Mar. 8, 2007) (unpublished) (noting that the legislative history of the Volunteer Protection Act indicates it was meant to cover a wide range of volunteers). The Vanhorns volunteered, not to benefit World Experience, but to benefit the foreign exchange students it served. Their role as a volunteer host family could not be effectively done unless the Vanhorns communicated directly with Niclas's mother and assumed general portions of the parental role. Those necessities do not alter the relationship between the Vanhorns and World Experience. *See Hochman v. Eddy*, 2014 WL 1647017, at *3 (Conn. Super. Mar. 24, 2014) (unpublished) (rejecting the argument that a

defendant needs some "undefined connection" to the nonprofit organization to qualify as a volunteer).

By hosting Niclas the Vanhorns were performing a service for and on the behalf of World Experience. The Vanhorns applied to be a host family with World Experience, (Vanhorn App., Doc. 38-3), and only after having been vetted and accepted was Niclas placed with them, (DOS Cert. Study Guide, Doc. 40-5 at 2).[4] World Experience dictated many of the terms of the relationship between host families and students, as shown by the "Host Family Manual," (Doc. 40-4), host family orientation, (DOS Cert. Study Guide, Doc. 40-5 at 4), continued monitoring, (*see* Amend. Compl., Doc. 32 at ¶¶ 31, 32, 39 (asserting liability on the part of World Experience for its "monitoring" role)), and the limitations placed on contact with the students' home country and family, (Participation Agreement, Doc. 40-1 at 18). World Experience could also terminate the program at any time and expressly dictated the relationship between the student and the host family, requiring the student agree "to accept the rules of conduct imposed by [the host] family, to participate in family life as much as possible, to try his[] best to adjust to

---

[4] This vetting process is described as performing in-person interviews with all host family members living in the home, reviewing the home to ensure it will provide a "comfortable and nurturing home environment," contacting references to "[e]nsure that the host family has a good reputation and character," reviewing financial resources, and running criminal background checks. (DOS Cert. Study Guide, Doc. 40-5 at 3-4.)

the normal system of family life and to treat all the members of the family with respect." (*See* Liability Release, Doc. 40-1 at 28.) Additionally, host families could potentially receive income tax deductions for hosting students, (*see* Host Family Manual, Doc. 40-4 at 11), but only because of their relationship with a foreign exchange organization, *see* 26 U.S.C. § 170(g) (providing for a deduction for taxpayers with written agreements with qualified organizations to provide services to students).[5]

Evidence of the Vanhorns' direct contact with Niclas's family does not alter the volunteer status they enjoy. Plaintiffs have presented no evidence undermining the relationship between the Vanhorns and World Experience. Drawing all reasonable inferences in favor of Plaintiffs, *Matsuchita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the facts presented do not raise a genuine issue as to the volunteer relationship between the Vanhorns and World Experience.

### B.  Nonprofit Organization

For the volunteer immunity statutes to apply, the organization involved

---

[5]  Other than the Vanhorn's host family application, (Doc. 38-3), and the Host Family Manual, (Doc. 40-4), there is no evidence of a written agreement between the Vanhorns and World Experience. There is also no indication as to whether the Vanhorns either did or did not receive a tax deduction for hosting Niclas.

must be a nonprofit organization organized under 26 U.S.C. § 501(c)(3). There is no dispute that at the time of the incident World Experience was a § 501(c)(3) organization. (Doc. 38-5, World Experience's Form 990.)

    **C.**    **Course and Scope of Conduct**

The Amended Complaint itself alleges that the Vanhorns were acting in the course and scope of their capacity as volunteers for World Experience when the Vanhorns' alleged misfeasance occurred. Plaintiffs' allegations are grounded in the idea that the Vanhorns breached their parental duties to Niclas and that such conduct resulted in his death. (Doc. 32 at ¶ 35 (alleging that the Vanhorns while acting as Niclas's host parents "were acting *in loco parentis*").) To the extent such duties may have existed, they would only have arisen through the Vanhorns' responsibilities as Niclas's host family. (*See* Medical Release, Doc. 40-1 at 17; Participation Agreement, *id.* at 18; Liability Release, *id.* at 28-29); *see Avenoso*, 2006 WL 490340, at *5 (noting that the plaintiff's own affidavit confirmed the conduct occurred in the course and scope of the volunteer activity). That is the case even if World Experience was not aware of the individualized choices the Vanhorns made on a day-to-day basis regarding that role. *See Elliot*, 2007 WL 757891, at * 3 (holding that the individual supervising a sixteen year-old when he drowned at a La Quinta Inn while on a trip with a community youth basketball

team was immune pursuant to the Volunteer Protection Act). The Vanhorns were acting within the course and scope of their capacity as volunteers at the time of the conduct alleged to have caused Niclas's death.

Because the Vanhorns are immune from liability for ordinary negligence pursuant to Montana's volunteer protection statute, summary judgment is granted in their favor as to those claims.

## II. Gross Negligence and Punitive Damages

The immunity from liability provided by Montana's volunteer protection statute does not apply to willful or wanton misconduct. *See* § 27-1-732(1). Similarly, the Volunteer Protection Act does not immunize a volunteer from the harm caused by "gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer." 42 U.S.C. § 14503(a)(3). Here, Plaintiffs insist a jury could find the Vanhorns knew of the tree well deaths at Whitefish Mountain Resort and the dangers tree wells presented yet did not take steps to reduce that risk. (Doc. 39 at 20-21.) Despite making the argument, Plaintiffs have failed to present evidence controverting the Vanhorns' sworn testimony that they warned Niclas of the dangers of tree wells and skiing alone. For this reason alone, summary judgment should be granted in favor of the Vanhorns. But, even if Plaintiffs had presented sufficient evidence to

raise a genuine fact dispute as to any warning, they have no proof showing that the risk Niclas faced was so highly probable and known to the Vanhorns as to make their alleged failure to warn rise to the level of willful or wanton misconduct.

The term "willfully" "when applied to the intent with which an act is done or omitted, means a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate the law, to injure another, or to acquire any advantage." Mont. Code Ann. § 1-1-204(5). Although the term "wanton" does not have a statutory definition, the Montana Supreme Court has held it synonymous with the term "reckless." *Jobe v. City of Polson*, 94 P.3d 743, 746 (Mont. 2004). The Montana Supreme Court has further defined the phrase "willful, wanton or reckless conduct" as conduct for which:

> it is apparent or reasonably should have been apparent, to the defendant that the result was likely to prove disastrous to the plaintiff, and the defendant acted with such indifference toward, or utter disregard of, such a consequence that it can be said he was willing to perpetuate it.

*Id.* (alterations omitted).

The Montana Supreme Court has affirmed the grant of summary judgment on the question of willful and wanton misconduct where the plaintiff merely asserted conclusory or speculative statements as to the nature of the alleged misconduct. *See e.g. Saari v. Winter Sports, Inc.*, 64 P.3d 1038, 1043 (Mont.

2003) (granting summary judgment on claims arising out of after-hours sledding accident at ski resort even though resort knew of dangers of sledding); *Weinert v. City of Great Falls*, 97 P.3d 1079, 1085 (Mont. 2004) (same regarding sledding in city park where city had considered various safety measures before deciding to install the net that caused the alleged injury).  The Court has reversed a grant of summary judgment, however, where the plaintiff presented sufficient proof upon which a jury could reasonably conclude that the defendant knew of the condition and the attendant dangers and consciously delayed repairing them or failed to take steps to reduce the risk.  *Jobe*, 94 P.3d at 747 (regarding a rotted plank on city dock that the city may have been aware of prior to an injurious incident); *Gatlin-Johnson ex rel. Gatlin v. City of Miles City*, 291 P.3d 1129, 1135 (Mont. 2012) (regarding a child falling from a slide where a "trier of fact could conclude that the City had knowledge of the danger of children falling on hard surfaces in the park and knowledge of the steps that could be taken to reduce that risk").

Here, Plaintiffs argue a jury could conclude that the Vanhorns had knowledge of the danger of tree wells and knowledge of the purported danger of skiing alone yet failed to take any action to reduce the risk of serious injury or death regarding Niclas and these hazards.  However, Plaintiffs do not support these conclusory and speculative statements with any substantial evidence.

Plaintiffs merely state that the safety talk the Vanhorns had with Niclas may not have occurred or may not have adequately warned of the dangers. That is insufficient to counter the direct evidence presented by the Vanhorns that such a safety talk did in fact occur and warnings about skiing off groomed trails were given. (*See* SUF, Doc. 38 at ¶ 9.) In the absence of evidence to the contrary, Plaintiffs have failed to establish the existence of genuine issues of material fact regarding whether the Vanhorns acted in a manner constituting willful or wanton misconduct.

That said, even if the Vanhorns did not warn Niclas of the dangers of tree wells and skiing alone, that failure does not amount to willful or wanton misconduct as a matter of law. Viewing the facts in Plaintiffs' favor, no reasonable jury could conclude that it was apparent or reasonably should have been apparent to either of the Vanhorns that allowing Niclas to ski alone without warning him about the inherent dangers of skiing was likely to result in his fall into a tree well and subsequent death and that the Vanhorns embraced that known risk with indifference to the consequences. Niclas was an intermediate skier and had been skiing with the Vanhorns on several occasions before December 29. He skied by his own report multiple times in Europe. While the failure to warn about tree wells or skiing alone under these circumstances could potentially amount to ordinary negligence, ordinary negligence even if it existed is insufficient to defeat

summary judgment here. The alleged conduct of the Vanhorns does not rise to the level of willful or wanton misconduct as a matter of law.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that the Vanhorns' motion for summary judgment (Doc. 36) is GRANTED.

The Vanhorns' rights and interests in this litigation are resolved in their entirety, there is no just reason for delay, IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment in favor of the Vanhorns and against Plaintiffs as set forth in this Opinion and Order. *See* Fed. R. Civ. P. 54(b).

IT IS FURTHER ORDERED that the Vanhorns' motion *in limine* (Doc. 46) is DENIED as MOOT.

Dated this 4th day of September, 2015.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT